*425 Opinion of
the Court.
THIS was an action of ejectment, on the demise of the heirs of John Funk. The children and heirs of Thomas M’Intire were the tenants in possession, and admitted defendants, upon entering into the common rule. On the trial, the lessors of the plaintiff produced in evidence a patent from the commonwealth to Jacob Funk, for 600 acres on Middle creek, covering the land in controversy, and the will of Jacob Funk, containing the following devise: “I give to my son John, all my lands on Middle creek, a branch of Nolin, lying between the lands given to Robert Martin, by an instrument which the said Martin has in his possession, and a 2,000 acre survey of Montgomery, to him and his heirs forever;” and proved by a witness, that the lessors of the plaintiff were the heirs of John Funk, deceased, who was the son of Jacob Funk.
The defendants, on their part, produced in evidence a patent to W. Montgomery for 2,000 acres, covering the land in controversy, but of younger date, and offered to read a deed of conveyance from Montgomery, a citizen of *426 Prince William county, Virginia, to John M’Intire, bearing date 28th September 1792, and certified by the clerk of the county court of that county, with the seal of the court annexed, to have been acknowledged in that court by Montgomery, on the first of October of the same year, and admitted to record; and upon that authentication, was, on the 12th of March 1793, admitted to record in the county court of Nelson county, where the land lay; but the lessors of the plaintiff objected to the reading of the deed, and the court sustained the objection, on the ground that its authentication was not such as to warrant its admission to record in this state. The defendants then read in evidence a deed from John M’Intire to them, bearing date the 15th of June 1815, for 200 acres, including the land in controversy, and proved by several witnesses, that Thomas M’Intire, the ancestor of the defendant, bought of John M’Intire 200 acres, in 1792, and settled on the same in that year, outside of the interference, and that in 1793 he cleared and enclosed a part of the interference, and that he and the defendants have ever since been in the uninterrupted possession, until the bringing of this suit, in 1818. One of the witnesses, who administered upon the estate of Thomas M’Intire, deposed, that after the death of M’Intire, in 1808, he found amongst his papers a bond for 200 acres of land, the same on which he settled, purporting to be executed by John M’Intire; that he did not recollect that the bond was attested by subscribing witnesses; that he called on John M’Intire for a deed, who acknowledged the bond to be his, and accordingly executed the deed to the defendant bearing date the 15th of June 1815; that at the time the deed was executed, the bond was delivered to John M’Intire; that he believed the bond bore date in 1792, and that the courses mentioned in the deed were taken from the bond.
Where lands are directed by will to be sold, and the proceeds of the sale divided among the heirs of the devisor, the title is in the heirs until they are sold.
All the evidence in relation to the bond from John to Thomas M’Intire, was excluded from the jury, on the motion of the lessors of the plaintiff. The defendant then produced other testimony, conducing, in some measure, to show that the tract of 200 acres claimed by them, had been bounded and demarked by actual survey, more than twenty years before the commencement of this suit; and after the evidence was closed, the court, on the motion of the lessors of the plaintiff *427 instructed the jury, that if they believed the patent to Jacob Funk included the land in controversy, and that the lessors of the plaintiff were the heirs of John Funk, they ought to find for the plaintiff all the land claimed by the defendants within the patent to Funk, and which the defendants, and those under whom they claim, have not bad in actual possession twenty years before this suit was commenced; and that the actual possession of the defendants and those under whom they claim, before the execution of the deed from John M’Intire to the defendants, did not extend beyond their actual enclosure, unless they claimed by fixed metes and bounds. To the giving of these instructions, as well as to the rejection of the deed from Montgomery, and the exclusion of the parol evidence in relation to the bond on John M’Intire, the defendants excepted; and a verdict and judgment having been rendered against them, they have appealed to this court.
We have no hesitation in according with the circuit court as to the propriety of excluding the parol evidence in relation to the bond on John M’Intire. We do not, indeed, suppose that the production of the bond, under the circumstances of the case, was necessary; for the bond having become functus officio, by the execution of the deed of conveyance, and delivered up to the obligor, who could have no motive to preserve it, might rationally be presumed to have been cancelled or destroyed ; at least, we think these circumstances should be received as sufficient, prima facie, to account for the non-production of the bond, and to let in inferior or secondary evidence of its contents. But, before such evidence could be admitted, the execution of the bond should be proved by competent proof; and, in this case, there was no such proof produced. The only evidence of the execution of the bond, was the confession of the obligor; and although that might be evidence against himself, yet, as against others, it was mere hearsay, and wholly inadmissible. For want, therefore, of competent proof of the execution of the bond, parol evidence of its contents was properly excluded by the circuit court.
But with respect to the rejection of the deed from Montgomery to John M’Intire, we cannot concur with the circuit court. Where a deed was executed by a party out of the state, and acknowledged before the county court of the county where he resided, and cer *428 tified by the clerk of that court, with the seal of the court annexed, as was the case with the deed in question here, it was held, at this term, in the case Calvert, &c. vs. Fitzgerald, &c. (ante, p. 388,) to be sufficiently authenticated to authorise its admission to record in the proper office in this state; and a deed, when so recorded in due time, is undoubtedly admissible evidence, without further proof of its execution. The circuit court, therefore, erred in rejecting the deed in question in this case.
Nor can we concur with the circuit court in the instructions given to the jury. The statute of limitations was unquestionably no bar to the recovery in this case, only so far as the defendants, or those under whom they claim, had an actual possession of twenty years before the commencement of the suit; and it is equally clear, that their actual possession did not extend beyond their actual close, before the execution of the deed from John M’Intire to the defendants, unless they claimed by fixed metes and bounds, which was a matter proper for the jury to determine. But, independent of the statute of limitations, the lessors of the plaintiff did not show themselves entitled to recover all the land claimed by the defendants, as the circuit court instructed the jury. The lessors of the plaintiff showed no title, only as the heirs of John Funk; and there is no pretence to say that he had any title, only as the devisee or heir of his father, Jacob Funk. As devisee, it is obvious that the evidence did not show him entitled to any part of the land in controversy; for the devise to him was not of all the lands on Middle creek, generally and absolutely, but of all the lands on Middle creek lying between the lands given to Robert Martin and a 2,000 acre survey of Montgomery. It is obvious, therefore, that the land devised to John Funk must be bounded by the line of Montgomery’s survey, which is the survey of the interfering patent under which the defendants hold. On which side of Montgomery’s interfering line the lands devised to John Funk lay, is left uncertain by the evidence in the cause; because where the lands given to Martin lay, is not shown; and this uncertainty, if it could not be removed, would entirely defeat the devise. If, however, the uncertainty can be removed, by showing where the land given to Martin lay, it will probably be found to be not within the interference; for the *429 tract patented to Jacob Funk is an oblong square, and interferes only in a small part of one end with Montgomery’s survey. But, taking it for granted that Martin’s land lies in the end opposite to the interference, still it is clear that the tract devised to John Funk must be between Martin’s land and the line of Montgomery’s survey, and in that case cannot include any part of the land in controversy. As devisee, therefore, John Funk can have no title to the land included in the interference between Jacob Funk’s and Montgomery’s patents; but the land in the interference does not appear to have been devised specifically to any other person. There is, in the will of Jacob Funk, a residuary clause, whereby he authorises all his estate, not specifically devised, to be sold, and directs the proceeds to be divided amongst his children and grand children, therein named, of whom John Funk is one. But that clause does not pass the title, but only gives an authority to sell; and as the land in controversy is not otherwise disposed of by the will, it must have descended to the heirs of Jacob Funk. As one of the heirs of Jacob Funk, John Funk was entitled to an equal undivided part with the other co-heirs, and so much only were the lessors of the plaintiffs entitled to recover.
Judgment reversed, and new proceedings ordered.